The opinion of the court was delivered by
White, J.
The plaintiff by section four of act No. 139 of the extra session of 1877 (acts of 1877, p. 210) was authorized to bring suit against the State of Louisiana for any cause of action it might have against the State growing out of the construction, maintenance, or repairs of any levees, constructed, maintained, or repaired by said company, and in consequence thereof instituted the present action, alleging the following sums to be due by the State :
Balance due up to first of October, 1873..................§1,004,745 62
Balance up to January 25, 1877 .......................... 588,442 27
Due for work done in advance of taxes of 1877, collectible in 1878................................................ 115,124 00
Total.............................................§1,708,311 89
The State, after excepting that the petition disclosed no cause of action, answered in substance as follows;
First — By a general denial.
Second — That the plaintiffs had no claim whatever against the State, thatwhatever might be the amount in arrears for the maintenance, construction, and repairs of levees, such sum was not a debt against the State, but simply a claim against the fund resulting from the taxation levied under the Levee Company laws; that even if the claim of the company was one against the State, the company was estopped from so contending because of its pleadings and the judgment in consequence *251 thereon in the case of the State ex rel. Louisiana Levee Company vs. Clinton, Auditor.
Third — That if the laws creating the Levee Company and those passed in furtherance of its being created a debt against the State they were null and void and of no effect, because at the time of the passage of these laws the constitution prohibited the contracting of any debt exceeding the sum of $25,000,000, which limit had then been reached.
The lower court came to the conclusion that the plaintiff had no claim against the State and dismissed the suit.
The matters in contest embrace a wide inquiry, but may be determined, we think, by answering the following questions :
First — What amount, if any, is due the plaintiff'? Whether it isa 'debt against the State, or simply a debt against the fund created by the taxes hitherto levied or to be hereafter collected from those already levied in support of the Levee Company.
Second — If any sum be due, is it a debt due by the State or simply a claim against the taxes as collected under the Levee Company acts ?
Third — If only a claim against the taxes as collected, ought the plaintiff’s suit, under the terms of the act of 1877 authorizing it, to be dismissed ?
First — Before the trial of the cause below, by consent of both parties, auditors were appointed who reported as follows:
Amount chargeable first of October, 1873.................$2,168,045 62
Amount paid out of the taxes of 1871 and 1872........... 1,158,096 67
Balance............................................$1,009,096 67
Amount chargeable from the first of October, 1873, to June 25, 1877............................................... 1,804,433 54
Amount paid out of the taxes from October 1,1873, to June 25, 1877............................................... 1,224,101 05
Balance............................................. $580,332 49
Amount of work done in advance against the taxes of 1877, ' collectible in 1878..................................... $115,124 00
Total..............................................$1,704,553 16
The report of the auditors was not homologated, but was referred to be disposed of with the merits of the action. The sums, however, are now admitted to be correct, and the question to be determined is, has the plaintiff a claim against the State for the amount, or is the amount simply payable out of the taxes hitherto levied for levee purposes as they are collected ?
Second — The solution of this inquiry involves the examination of the various enactments in favor of the Levee Company. By act No. 4 of 1874 the Levee Company was created. The act was entitled “ An Act *252 relative to the Louisiana Levee Company, a corporation organized under the general laws of the State, constituting it a body politic and corporate, with certain powers, privileges, and franchises, and contracting with said corporation for the construction, maintenance, and repairs of certain levees, and providing for the compensation therefor.” After ratifying the notarial charter by which the company had taken being, the second section of this act provided as follows :
“ Seo. 2. That for the purposes of providing and maintaining proper and efficient levees throughout all portions of the State watered by the Mississippi and the rivers and streams and bayous running into and from the same, and protecting the inhabitants from inundation, the State of Louisiana contracts and agrees with said Louisiana Levee Company in terms as follows :
The first paragraph of this section creates a board of engineers or commissioners with power to fix the dimensions and work to be done.
The second paragraph is as follows;
“ That the said Louisiana Levee Company for and in consideration of the compensation, benefits, and rights and powers herein stated shall take charge of, manage, control, construct, repair, and keep in repair all the levees in this State on the Mississippi river, its tributaries and outlets, and such levees in the State of Arkansas as may be necessary to protect any of the lands of the State from overflow by the waters of the Mississippi or the Arkansas rivers.”
The third paragraph gave the corporation the management and control of these levees.
The fourth provided that “ the said corporation shall within sixty days from the receipt of the report of said commission commence the construction of said levees, and shall thereafter construct not less than three million yards per year until the said levee shall be completed according to the standard required by the report of said commission.” .
The fifth paragraph made the corporation responsible, for damages to persons injured by their neglect or failure to do their required work.
The sixth provided as follows : “ That within thirty days after the receipt of the report of said commission the Governor of the State shall ■cause an estimate to be made of the cost of constructing or building said levees according to the standard required by the said report, said estimate to be made at the rate of sixty cents per cubic yard of said work; to transmit said estimate to the Auditor of the State; and said Auditor shall thereupon apportion the sum total of the estimated cost of said work among the several parishes according to the assessment rolls "of the State, and shall annually thereafter for a period of twenty-one years cause to be collected ten per centum of the sum of said estimates ; provided, however, that until said estimate is made as provided in this *253 article the Auditor of the State shall levy and collect annually in lieu of said ten per cent of said estimate two mills upon the dollar of the assessed value of the taxable property of the State. The said ten per centum of the sum of said estimate, or said taxes in lieu thereof, shall be collected at the same time and in the same manner and by the same officer as the ordinary taxes of the State are collected. Said ten per centum, or said taxes in lieu thereof, when collected shall be paid over to the Treasurer of the State and shall be set apart as a special fund to-be known as the * Levee Construction Fund,’ which shall not be used for any other purpose than as compensation to said Louisiana Levee-Company, and said fund shall be paid on the order of the president of said company to the treasurer thereof.”
Paragraph seven, That the Auditor of the State shall cause to be assessed and collected annually for the period of twenty-one years from and after the passage of this act two-tenths of one per cent upon the assessed value of the taxable property within the State, to be set apart and be known as the Levee Bepair Fund, which said fund shall be collected at the same time and in the same manner and by the same officers-as the ordinary taxes of the State.
Paragraph eight gave to the company the power to mortgage or-assign the taxes to be collected for its benefit.
Paragraph nine provided “That whereas no taxes as provided herein can be levied and collected during the year 1871, the Governor of the State is hereby authorized and required to issue the bonds of the-State to the company to the amount of one million dollars.”
This act was amended by act No. 27 of the same year, ratifying and confirming the contract between the Louisiana Levee Company and the Governor of the State of Louisiana. This act amended by providing that the commission to be appointed shall be required to limit the amount of levees to be constructed and repaired as required by their report so that they shall not exceed one million five hundred thousand cubic yards, nor the total amount collected for the construction fund ever exceed nine hundred thousand dollars annually. Acts of 1871, pp. 29 and 64. These enactments were modified by act No. 43 of 1873, the main change being the reduction of the compensation to be paid from sixty cents to fifty cents per cubic yard, with the following provision :• That the Auditor shall annually levy and cause to be collected in the same manner and by the same officer as the ordinary taxes of the State-are collected a sum sufficient to cover the cost of all levees required to be built by the Commission of Engineers in their annual report, with twenty per cent additional.
Said taxes when collected shall be paid over to the Treasurer of the-State, and shall be set apart as a special fund to be known as the Levee- *254 Construction Fund, which shall not be used for any other purpose than as compensation to said Louisiana Levee Company, and the said fund shall be paid on the order of the president of said company to the treasurer thereof ; provided, however, that any surplus moneys derived from the taxes collected in any year shall be placed to the credit of said fund for the year next succeeding ; and provided, further, that all levees constructed by the said company before the first day of October, 1873, shall be paid for by the State at the rate of sixty cents per cubic yard, “ as the existing contract and laws provide.”
By the Funding Act of 1874, being act No. 3 of 1874, the levee-tax was reduced to three mills, and in the same year an act entitled an act providing for the acceptance by the Louisiana Levee Company of a reduction of the rate of certain taxes to be •collected as compensation to said company from four mills to three mills, and in.consideration of said reduction relieving said company from liability for damages in certain cases. This act stipulated that upon the acceptance by the Levee Company of the reduction of taxation, made in the Funding Act, the clause in the original grant making them liable for damages shall be repealed. Such is the legislation under which the Levee Company took its being and exercised'its functions, except the act of 1875, which we shall hereafter notice.
Did these acts give to the company a claim against the State ? We think not. They point out what the compensation of the company is to be ; make it result from taxation, and in no manner, even by implication, point to a responsibility on the part of the State over and above the amount of taxation to be levied. The very title of the original act indicates that the compensation provided by the act is the compensation to which the company was entitled. The very clause creating the contracts provides, as we have seen, that the said Louisiana Levee Company for and in consideration of the compensation “hereinafter set,” etc., etc. These laws forbid the idea that the taxes were to become the property of the State, for they delegate to the Levee Company the right to mortgage them by anticipation. They are made payable after collection, not as ordinary State taxation, upon the warrant of the proper State office^ but directly to the Levee Company.
What are the reasons given for the contrary view of these various statutes ? We are told that the original act provided for the issueof bonds, and thereby creates a fairinference that the State was to be liable for the work. We think, on the contrary, the provision authorizing the issuance of the bonds is the very strongest light by which to read the intention of making the taxes the compensation, where bonds were not provided for. In fact, the inevitable conclusion from the language of the statute is that the bonds were intended to cover only the period where there was *255 to be no taxation. It is said that the amendatory act o£ 1874 points to the liability of the State. This claim results from the language of sec. 6, which we have already quoted, and is predicated on the following ; “And provided, further, that all levees constructed before the first day of October, 1873, shall be paid by the State at the rate of sixty cents per cubic yard, as the existing contract and laws provide.” This provision admitted no liability on the part of the State. The section reduced the compensation from sixty to fifty cents, and the language quoted was simply a reservation of the rights of the company to be paid at the rate of sixty cents for levees constructed- during the period when the law allowed sixty cents. The words “shall be paid by the State” were qualified by the words “ as the existing contract and laws provide,” and clearly pointed to the payment in the manner directed by the original law, without any additional guarantee or source of revenue.
That original law made the taxes the means of payment, and such was the construction given to these laws, or, at all events, to those pertinent to the present controversy, by our predecessors. In State ex rel. Louisiana Levee Company vs. Charles Clinton, Auditor, this court through the organship of Mr. Justice Morgan said :
“We do not see in what manner the amendment of the constitution of the State which limits the State debt to twenty-five millions is violative of the law creating the Levee Company. The State has created no debt in their favor. It has assumed no responsibility on their account. It is not paid or to be paid out of the funds of the treasury proper. The State incorporated the company, giving it certain rights and privileges, and imposing heavy burdens upon it, at the same time it contracted with the company with regard to a work of great public utility, secured the company by imposing a general taxation upon all property and made it the duty of the tax collectors to collect the same and deposit the sums collected in the treasury. But it provided at the same time that the moneys so collected should be placed to the credit of a certain fund to be drawn upon by the officers of the company. But this does not create a liability on the part of the State. The State does not pay; its bonds are not out, nor any one its creditor ; nor can they be its creditor for any sum contracted by the Levee Company.” 25 A. 401.
This adjudication was provoked by the Levee Company itself; was rendered at its instance in a suit to which it was a party. The company was therein claiming the amount of the taxes in the treasury, and the payment was resisted on the ground that the Levee Company laws created a debt and hence violated the constitution. The company in response contended that their act created no claim against the State, but simply a claim to the taxes, and their pretensions were sustained.
This view whs re-affirmed in State vs. Maginnis, 26 A. 559. It is *256 now urged by the company that this construction was erroneous ; but as we have seen it was a decision provoked by themselves, rendered on their own construction of the contract; and, whether or not it suffices to create an estoppel, we are clear that it points to the contemporaneous construction given to the acts not only by the company themselves, but by the court to whom they submitted it for adjudication, and as such it falls directly within the domain of stare decisis. This interpretation, which is now strenuously attacked, was not only provoked by the plaintiff but was made the basis of action by the General Assembly, for when in 1874, in the act providing for an acceptance by the company of the reduction of taxation, the taxes were spoken 'of as compensation, this language is to be considered as having been used with reference to the previous construction which it had received. Could we overlook these overwhelming conclusions, we would gravely hesitate before declaring that the enactments under review created a debt against the State, for we would be then obliged to recognize their nullity. When the act of 1871 was passed the constitution limited the debt to twenty-five millions of dollars, and that limit was then reached. State ex rel. Solomon & Simpson vs. Graham, Auditor, 23 A. 404.
If, then, the Levee Company acts created a debt, that debt would be unconstitutional, and we would be compelled to reject the whole amount. Some claim is made in this instance as to the erroneousness of the declarations of the amount of State debt made in the referred-to case; but we will not re-examine it, and if we did we could reach no other conclusion. In the suit to which we have already referred the Levee Company by their counsel expressly admitted that the limit of the debt had been reached, for the purpose of taking their claim out of the grasp of the constitutional limitation, and we can look with little favor upon their attempt now to reverse the concluded jurisprudence to which they have by judicial admission given adherence.
We are told that the Supreme Court of the United States has given a contrary construction to the Levee Company laws, and the case relied on is that of the Board of Liquidation vs. McComb, 2 Otto, 536. If the claim were true it would not command our attention, because at the date of th'e rendition of the judgment of the Supreme Court of the United States this court had not only declared that the Levee Company acts created no debt, but that if it did they would have been violative of the State constitution, because at the date of their passage the twenty-five-million-dollar limit was already attained. If, then, the construction given to the opinion of the Supreme Court of the United States were correct we should have to conclude that that high tribunal had disregarded the construction given to a State statute by the highest court in the State, and had disregarded the adjudication of the tribunal of last *257 resort within this State as to a question whether the State debt had attained the constitutional limit. Such, however, is not the case. The decision in the McComb ease was rendered on the following state of facts: The Legislature of 1875 had appointed a commission to ascertain the amount due the Levee Company, and had provided for the issuance to it of evidences of debt therefor, and had made these evidences of debt fundable in consolidated bonds. The funding of these evidences of debt was enjoined by McOcmb, and the opinion of the Supreme Court of the United States proceeded upon the hypothesis that the State had recognized the debt, and therefore the sum due the Levee Company was a debt of the State. The language used by Mr. Justice Bradley clearly sustains this conclusion. He says :
“ The amount payable to the Levee Company for its services is none the less a debt because already provided for by special taxes, and so far as the State is concerned it is no more of a public burden when chargeable upon one fund than it is when chargeable upon another. If the General Assembly for cause assigned sees fit to alter the mode of payment, it is difficult to see who else has the right to complain, unless specially injured by the change. The taxes formerly appropriated to it will be liberated and made available for other State purposes.”
. We would be compelled to reach the same conclusion if the act of 1875 were before us, and if the constitutional limitation had not been reached. But in the present controversy the act of 1875, which was the cause of the decision in the McComb case, is blotted from the statute book. The act of 1877, under which this suit is brought, and the provisions of which have been accepted by the company, provides “ that nothing herein shall be considered as affecting any legal right of said Levee Company for the purpose of said suit, except any rights claimed by them under the provision of act No. 24 of 1875, which shall be considered in said suit as non-existing, null, and void, and no claim in favor of said company shall be considered as flowing from said act or any certificate presented thereunder.”
It is said that the act of 1877, under which this suit is brought,'constituted a new contract with the company, and provided for its payment part in bonds and the remainder in levee taxes; hence, whatever might be the force of the original acts, they are enlarged by the act of 1877. The terms of the act of 1877 afford the best denial of this pretension. Section five of that act provides that nothing in this act shall be construed to waive any of the defenses of the State to the suit herein authorized to be instituted, it being the true intent of this act to refer to the court for decision and adjudication under existing laws the entire subject matter of the controversy between the State of Louisiana and the Louisiana Levee Company growing out of the alleged contract made *258 under the provision of act No. 4 of 1871, approved February 20, 1871-, and act No. 43 of the acts of 1873, and all acts amendatory thereto: and nothing moreover herein shall be considered as affecting any legal right ■of said Levee Company for the purpose of said suit, except any rights claimed by them under the provisions of act No. 21 of the acts of 1875, which shall be considered in said suit as non-existing, null, and void, •and no claim in favor of said company shall be considered as flowing from said act, or any certificate thereunder.
Language could not make it plainer that the sole intention and •agreement of the act of 1877 was to refer the claimed rights of the Levee Company to the courts for adjudication under the laws as they stood. True, the* act of 1877 provided “ that in the event judgment •should be rendered against the State of Louisiana in favor of said company, the same shall be liquidated and paid as follows :” But that act also provided for the contingency of no judgment being rendered against ■the State, but one simply against the fund, for the act specially declares ■that all levee taxes heretofore assessed are hereby set apart as a special •fund for the payment according to the provisions of this act of such judgment as may be rendered in favor of the company. The terms of the act contemplated the possibility of the non-rendition of the judgment against the State, and provided for that contingency by declaring ■that the taxes should be specially set apart to pay “ such judgment ” as may be rendered against the fund. The act made the institution of the suit by the Levee Company under its provisions an acceptance of its •terms, and by it they are concluded.
The act of 1877, we think, was an act of compromise by which the Levee Company was authorized to institute suit for the liquidation and ascertainment of the amount of their claim, whether against the State •or against the fund, with a provision for the issuance of bonds if the ■claim was decided finally to be one against the State, with a provision for the payment of the amount ascertained to be due out of the fund if only a claim against the fund. This conclusion is a solution of the third •inquiry which we proposed in commencing this opinion.
We do not consider that although the Levee Company was found to •have no claim against the State such conclusion should have entailed the dismissal of their suit, as we think the purpose of the act of 1877 was the fixing of the amount which they were entitled to claim, whether against the State- or against the fund. In this view, we think the judgment of the lower court erroneous. We will therefore amend it in that particular.
It is therefore ordered, adjudged, and decreed that the judgment of the lower court in so far as it dismisses the suit of the Levee Company be and the same is hereby reversed; and, proceeding to render such *259 judgment as should have been rendered by the lower court, it is ordered, adjudged, and decreed that the Louisiana Levee Company be recognized as having a claim against the fund created by the levee taxes heretofore assessed under the provisions of the various laws creating and amending the power of the Levee Company and specially provided for in section six of act No. 139 of 1877, approved,May 9,1877, for the following sums :
One million and nine thousand and ninety-six 67-100 dollars due up to June 25,1877................................§1,009,096 67
Five hundred and eighty thousand three hundred and thirty-two 49-100 dollars.................................'.... 580,332 49
Due up to June 25, 1877, for work in 1877 anticipating levee tax 1878................... -115,124 00
Total.............................................§1,704,553 16
All the sums paid thereon since June 25,1877, to be deducted from this amount; said amount not to be considered a debt against the State, but to be paid by the application of the levee taxes heretofore assessed as provided in section seven of act No. 139 of 1877, approved May 9th, 1877. The sum fixed as due for the amount of work done in advance against the taxes of 1877, collectible in 1878, to be paid from the one third of the levee tax of 1878, as provided in section nine of the aforementioned act. The costs of appeal to be borne by the defendant and those of the lower court by the plaintiff.